# Illinois Official Reports

## Appellate Court

---

### *People v. Sevedo*, 2017 IL App (1st) 152541

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEJANDRA SEVEDO, Defendant (Sarah's Inn and Carol Gall, as Executive Director of Sarah's Inn, Contemnors-Appellants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-2541 |
| Filed | March 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-16278; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Reversed and fine vacated. |
| Counsel on Appeal | Baker & McKenzie LLP, of Chicago (Michael C. McCutcheon and Eileen T. Flynn, of counsel), for appellants.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Sara McGann, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justice Hall concurred in the judgment and opinion.<br>Presiding Justice Gordon specially concurred, with opinion. |

**OPINION**

¶ 1    Contemnors, Sarah's Inn and Carol Gall, its executive director, appeal civil and criminal contempt orders entered against them based on their refusal, pursuant to the statutory privilege for domestic violence advocates and victims, to produce documents for *in camera* judicial review. Sarah's Inn is a domestic violence advocacy center and was providing services to defendant Alejandra Sevedo, who had been charged with armed robbery. During that trial, defendant allegedly made statements to a Sarah's Inn advocate that threatened to harm one of the State's witnesses, a police detective. The advocate disclosed the statements to the police pursuant to an exception to the advocate-victim privilege for imminent risks of serious bodily harm or death.

¶ 2    Later, defendant was indicted for threatening a public official based on the disclosed statements, and the State eventually served a subpoena on Sarah's Inn to produce documents generated in connection with the report of defendant's threatening statements. Sarah's Inn moved to quash the subpoena based on the privilege for confidential communications between domestic violence advocates and victims pursuant to section 227 of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/227 (West 2014)). The circuit court ordered Sarah's Inn to produce the documents for *in camera* review, but Sarah's Inn and Gall refused. The circuit court held them in direct civil and criminal contempt but stayed the imposition of the fine pending the outcome of this appeal.

¶ 3    On appeal, contemnors argue (1) the circuit court erred by denying their motion to quash because the subpoenaed documents are protected by the section 227 advocate-victim privilege, which is absolute and does not allow a court to conduct an *in camera* review, (2) *res judicata* precludes the State from contesting whether defendant's statements to the advocate were absolutely privileged and remained privileged despite the advocate's disclosure pursuant to the imminent risk exception, and (3) the contempt findings and fine should be vacated based on contemnors' good-faith assertion of the advocate-victim privilege.

¶ 4    For the reasons that follow, we reverse the circuit court's order that denied the motion to quash the subpoena and required Sarah's Inn to submit the documents for *in camera* review. We also vacate the contempt fine imposed on Sarah's Inn and Gall.

¶ 5                                    I. BACKGROUND

¶ 6    Defendant and her then boyfriend were arrested in connection with a 2013 armed robbery. Defendant allegedly was in an abusive relationship with the boyfriend and underwent counseling with a domestic violence advocate employed by Sarah's Inn. The State charged defendant with armed robbery, and the Sarah's Inn advocate accompanied her to court appearances as part of the agency's counseling services. Defendant's boyfriend was not charged in that matter.

¶ 7    When the bench trial commenced against defendant, a Chicago police detective testified as a witness for the State on July 28, 2014. That afternoon, defendant made statements to the Sarah's Inn advocate that allegedly threatened the detective and his family. The advocate later reported defendant's statements to the police pursuant to section 227(b)(2) of the Act, which allows domestic violence counselors or advocates to disclose any confidential communication without the written consent of the domestic violence victim "in cases where failure to disclose

is likely to result in an imminent risk of serious bodily harm or death of the victim or another person." 750 ILCS 60/227(b)(2) (West 2014).

¶ 8 Defendant ultimately was acquitted of armed robbery in August 2014, but a complaint was filed concerning her alleged threat to harm the detective. The grand jury issued a subpoena to the Sarah's Inn advocate to appear before the grand jury on September 8, 2014, to testify concerning the complaint. Sarah's Inn moved to quash the grand jury subpoena, arguing that defendant's statement to the advocate was a privileged communication between a domestic violence advocate and victim. Sarah's Inn asserted the statement at issue constituted a confidential communication under section 227 of the Act because it was "any communication between an alleged victim of domestic violence and a domestic violence advocate or counselor in the course of providing information, counseling, or advocacy." 750 ILCS 60/227(a)(3) (West 2014). Sarah's Inn also argued the advocate's disclosure to the police of defendant's statement based on an imminent risk of serious bodily harm to the detective had no effect on the privilege, which defendant never waived.

¶ 9 After hearing argument on September 8, 2014, the circuit court granted the motion to quash the grand jury subpoena. The court found the communication the advocate received from defendant was privileged, the advocate acted properly when she notified the police, the notification to the police dissipated the imminent risk of serious harm, defendant never waived the privilege, and the privilege must be deemed intact so that victims of domestic violence will feel secure to discuss their situations with their advocates and counselors.

¶ 10 On September 16, 2014, the grand jury indicted defendant for threatening a public official, alleging defendant knowingly and indirectly conveyed a threat that would put the detective or his immediate family in reasonable apprehension of bodily harm when defendant threatened that she knew the detective's address and that he was married and had two children, and she was going to hurt the detective and had a plan to do so. Moreover, defendant conveyed the threat because of the detective's performance of his public duty.

¶ 11 In October 2014, the State issued a subpoena *duces tecum* to Sarah's Inn for "[a]ny and all incident reports or documents [in Sarah's Inn's possession or control that were] generated in connection to the report of threats made about a Chicago Police Detective by [defendant] on or about July 28, 2014 reported under Chicago Police RD #HX364192 and communicated to [the domestic violence advocate]."

¶ 12 Sarah's Inn and Gall moved to quash the subpoena, arguing the issue was *res judicata* based on the court's September 8, 2014, ruling on the grand jury subpoena. They also argued that section 227 of the Act protected communications between domestic violence advocates and victims from disclosure, the privilege remained intact despite the advocate's disclosure under the imminent risk of serious harm exception, there was no evidence defendant waived the privilege, and federal statutes and regulations required Sarah's Inn to maintain the confidentiality of a client's records.

¶ 13 In response, the State conceded that the advocate involved in this matter met the definition in section 227(a)(2) of the Act (750 ILCS 60/227(a)(2) (West 2014)) of a domestic violence advocate. However, the State argued Sarah's Inn failed to establish that defendant made the statements to the advocate threatening the detective in the course of the client/advocate relationship. The State also argued that even if the statement was considered a confidential communication in a client/advocate context, the statement was subject to disclosure because it fell under the imminent harm exception of section 227(b)(2) of the Act.

¶ 14     In April 2015, the court found that the September 8, 2014, ruling quashing the grand jury subpoena did not preclude the State, after defendant was charged, from litigating whether the advocate's testimony about the threat and any related documents were protected from disclosure by the advocate-victim privilege. The court ordered Sarah's Inn to provide the documents to the court for an *in camera* inspection to determine whether the documents were protected from discovery by the privilege.

¶ 15     In May 2015, Sarah's Inn moved the court to reconsider, arguing the statements were made within the scope of the domestic violence advocate-victim relationship because the advocate accompanied defendant to court in the armed robbery case in the course of providing information, counseling, and advocacy and, thus, the statements were protected from disclosure by the unbroken absolute privilege. Sarah's Inn also argued that section 227 did not provide for any *in camera* inspection of the documents.

¶ 16     In July 2015, the court ordered Sarah's Inn to provide the documents for *in camera* review, and then the court would rule on the motion to reconsider.

¶ 17     In August 2015, Sarah's Inn refused to provide the documents, asserting the court was not allowed to conduct an *in camera* inspection of the documents to determine whether the advocate-victim privilege applied. After much discussion, Sarah's Inn agreed to file the documents under seal with the office of the chief deputy clerk of the criminal court building, and no one would review the documents pending the appeal of this matter. Furthermore, the State stipulated that it would not prosecute Sarah's Inn or its representatives for producing the documents under seal pursuant to the court's order. The court denied Sarah's Inn's motion to reconsider, found Sarah's Inn guilty of contempt, and fined it $500 per day but stayed the fine pending this appeal. The documents were then turned over to the office of the chief deputy clerk and remain under seal pending the outcome of this appeal.

¶ 18                                        II. ANALYSIS
¶ 19                        A. Domestic Violence Advocate-Victim Privilege
¶ 20     On appeal, contemnors Sarah's Inn and Gall argue the circuit court erred by denying their motion to quash the subpoena because the undisputed facts establish that the documents sought are protected by the advocate-victim privilege, which they contend is absolute and does not allow a court to conduct an *in camera* review.

¶ 21     Ordinarily, "[o]ne who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege. 'His mere assertion that the matter is confidential and privileged will not suffice.' " *Cox v. Yellow Cab Co.*, 61 Ill. 2d 416, 419-20 (1975) (quoting *Krupp v. Chicago Transit Authority*, 8 Ill. 2d 37, 42 (1956)). Because evidentiary privileges operate to exclude relevant evidence and therefore block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710 (1974). The issue raised concerns the scope of the domestic violence advocate-victim privilege provision of the Act. "The construction of a statute is an issue of law and our review is therefore *de novo*." *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996). See also *D.C. v. S.A.*, 178 Ill. 2d 551, 559-61 (1997) (we review the issue of whether a statutory discovery privilege applies in a given case under a *de novo* standard of review).

¶ 22 The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 430 (2005). The statutory language is the best indicator of legislative intent, and that language must be given its plain and ordinary meaning. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005). A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole. Accordingly, words and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). In construing a statute, we presume that the legislature, in its enactment of legislation, did not intend absurdity, inconvenience, or injustice. *Id.* We may consider the reason and necessity for the law, the evils it was intended to remedy, and the objects it was designed to attain. *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341 (1987).

¶ 23 If the statutory text is clear and unambiguous, it should be given effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express (*Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 426 (2002)) and without resorting to other aids of construction, such as the legislative history of the provision (*Village of Carpentersville v. Pollution Control Board*, 135 Ill. 2d 463, 469-70 (1990)). The language of a statute is ambiguous if it is susceptible to more than one reasonable interpretation. *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 397 (2004). "We consider whether a statute is ambiguous in the context of the facts of the case before us." *People v. Boyce*, 2015 IL 117108, ¶ 22.

¶ 24 When the Act was enacted in 1986, the General Assembly recognized that domestic violence was a serious crime and the legal system historically had dealt ineffectively with family violence. 750 ILCS 60/102 (West 2014). Section 227 of the Act specifically protects confidential communications between domestic violence counselors/advocates and victims and states, in pertinent part:

"(a) As used in this Section:

* * *

(3) 'Confidential communication' means *any communication* between an alleged victim of domestic violence and a domestic violence advocate or counselor *in the course of providing information, counseling, or advocacy*. The term includes *all records kept* by the advocate or counselor or by the domestic violence program *in the course of providing services to an alleged victim concerning the alleged victim and the services provided*. The confidential nature of the communication is not waived by the presence at the time of the communication of any additional persons, including but not limited to an interpreter, to further express the interests of the domestic violence victim or by the advocate's or counselor's disclosure to such an additional person with the consent of the victim when reasonably necessary to accomplish the purpose for which the advocate or counselor is consulted.

(4) 'Domestic violence victim' means any person who consults a domestic violence counselor for the purpose of securing advice, counseling or assistance related to one or more alleged incidents of domestic violence.

***

(b) *No domestic violence advocate or counselor shall disclose any confidential communication* or be examined as a witness in any civil or criminal case or proceeding or in any legislative or administrative proceeding *without the written consent of the domestic violence victim except* (1) in accordance with the provisions of the Abused and Neglected Child Reporting Act or (2) *in cases where failure to disclose is likely to result in an imminent risk of serious bodily harm or death of the victim or another person.*

(c) A domestic violence advocate or counselor who knowingly discloses any confidential communication in violation of the Act commits a Class A misdemeanor.

\* \* \*

(f) Nothing in this Section shall be construed to limit in any way any privilege that might otherwise exist under statute or common law.

(g) The assertion of any privilege under this Section shall not result in an inference unfavorable to the State's cause or to the cause of the domestic violence victim." (Emphases added.) 750 ILCS 60/227 (West 2014).

¶ 25 Contemnors argue the undisputed facts concerning the statement defendant made to the advocate establish that the documents sought by the State fall within the scope of the advocate-victim privilege. Specifically, defendant made the statement to her domestic violence advocate while that advocate was attending defendant's armed robbery trial in accordance with the advocate's job to provide information, counseling, or advocacy. There is no evidence that defendant and the advocate had any relationship apart from victim-counselor. According to contemnors, no further analysis is necessary to support the conclusion that the statement is protected by the advocate-victim privilege, which has not been waived by defendant or broken by the advocate's disclosure pursuant to the imminent risk exception. Contemnors argue this interpretation of the advocate-victim privilege is consistent with the court's holding in *People v. Gemeny*, 313 Ill. App. 3d 902, 908 (2000), that communications between a therapist and client occurring outside of a formal treatment session can still be considered privileged under the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 *et seq.* (West 1998)) because the "professional relationship cannot be neatly confined to what happens in formal treatment sessions" and "the danger that such communications could be disclosed later in court could discourage those needing help from seeking it in the first place." Contemnors also contend that the nature of this privilege is absolute and thus not subject to any *in camera* inspection by the court.

¶ 26 The State argues that defendant's threat to harm the detective falls outside the scope of the advocate-victim privilege because the statement was not made in a privileged context but, rather, to the advocate in open court following the detective's testimony against defendant in a matter unrelated to an incident of domestic violence. According to the State, in such a setting, neither the advocate nor defendant could reasonably be characterized as an advocate or a client at the time the statement was made, and the language of section 227 limits the scope of the privilege to instances where the parties involved acted in the specific roles of "advocate" and "victim." The State argues an advocate must actually be providing the victim counseling or support regarding incidents of domestic violence at the time of the communication in order for the privilege to apply, and consequently the advocate's mere accompaniment of defendant at the armed robbery trial fails to meet this requirement. In addition, at the time of the statement, defendant was not a domestic violence victim but rather a defendant in her own criminal case.

Moreover, the nature of defendant's statement demonstrates that the conversation did not take place under the guise of domestic violence counseling because the threat was wholly unrelated to any incident of domestic violence and was directed toward a third party, the detective who testified against defendant in the armed robbery trial.

¶ 27 In the alternative, the State argues that if the threat was made in an advocate-victim context, the threat is still subject to disclosure because it clearly met the exception for the disclosure of communications that present an imminent risk of serious harm and this exception does not expire. Finally, the State contends the rules of general criminal procedure and the Illinois Supreme Court discovery and subpoena rules establish that the trial court has the authority to review any related documents at issue to determine if they are, in fact, privileged.

¶ 28 We reject the State's constrained interpretation of the scope of the advocate-victim privilege. The terms and provisions of section 227 show the legislative intent to encourage victims of domestic violence to share confidential information with their advocates without the fear that the very act of seeking or receiving information, counseling, and advocacy will subject them to stigmatization or further victimization. Accordingly, the advocate-victim privilege prohibits the disclosure of any confidential communication unless the victim consents or an exception is satisfied. The scope of the privilege is very broad so that victims will not fear that confidential information will be disclosed to a third party. Nevertheless, the privilege does not protect any utterance between the victim and advocate; the plain language of subsection 227(b) limits the privilege to confidential communications. In order to qualify as a confidential communication, the communication between the victim and advocate must be "in the course of providing information, counseling, or advocacy." 750 ILCS 60/227(a)(3) (West 2014).

¶ 29 The undefined word "communication" is given its ordinary and popularly understood meaning as "information communicated[,] *** a verbal or written message" (Merriam-Webster's Collegiate Dictionary 233 (10th ed. 1998)), and the "expression or exchange of information by speech, writing, or gestures" (Black's Law Dictionary 273 (7th ed. 1999)). See *In re Ryan B.*, 212 Ill. 2d 226, 232 (2004). "Course" is "the act or action of moving in a path from point to point"; "accustomed procedure or normal action <the law taking its ~>"; "progression through a development or period or a series of acts or events." Merriam-Webster's Collegiate Dictionary 266 (10th ed. 1998).

¶ 30 By its plain terms, section 227(a)(3) protects "any" communication between defendant and the Sarah's Inn advocate in the normal series of acts or events of providing information, counseling or advocacy. We discern no language within this statutory provision that indicates the General Assembly intended to confine the privilege to protect only statements that are limited to the subject of domestic violence. A correct reading of the statute indicates that the legislature intended to include within its scope any communication beyond the topic of domestic violence, even statements unrelated to the information, counseling, or advocacy being provided to the victim. The first sentence of section 227(3)(a) sets forth the very broad boundaries of this privilege, and then the next sentence explains that this broad privilege includes the smaller category of all records kept by the advocate or domestic violence program "in the course of providing services to an alleged victim *concerning the alleged victim and the services provided*." (Emphasis added.) 750 ILCS 60/227(a)(3) (West 2014). The legislature chose not to restrict the very broad language in the first sentence by adding the limiting phrase "concerning the alleged victim and the services provided." If the legislature had done so, then

the language of the statute arguably would have supported the interpretation urged by the State. The legislature easily could have limited the scope of the privilege in the first sentence to communications related to domestic violence and the services provided to the victim but chose not to do so. When viewed in this context, the plain language of the statute protects even communications that are not related to instances of domestic violence or the services provided by the advocate. Accordingly, defendant's statement falls within the scope of the privilege.

¶ 31 We also disagree with the State's assertion that the imminent risk exception to disclosure applies to require Sarah's Inn to produce the privileged records for discovery in defendant's case for threatening a public official. There is no dispute between contemnors and the State that defendant's threat to harm the detective clearly met the exception for the disclosure of confidential communications based on imminent risk of serious harm at the time the advocate disclosed the threat to the police. The State, however, asserts that this exception does not expire, and contemnors counter that there is no current or continuing imminent risk of serious harm because the advocate relayed the threat to the police and defendant was arrested and charged with threatening a public official.

¶ 32 According to the statute, "[n]o domestic violence advocate *** shall disclose any confidential communication *** without the written consent of the domestic violence victim except *** in cases where failure to disclose *is* likely to result in an *imminent risk* of serious bodily harm or death of the victim or another person." (Emphases added.) 750 ILCS 60/227(b)(2) (West 2014). The plain language of the statute uses the present tense and requires the risk of harm to be "imminent," which means "ready to take place; *esp* : hanging threateningly over one's head." Merriam-Webster's Collegiate Dictionary 580 (10th ed. 1998). We discern no support in the statute for the State's assertion that once an advocate properly utilizes the imminent risk exception, the statement is subject to disclosure indefinitely. Clearly, this disclosure exception is tied to the requirement of an imminent risk.

¶ 33 Another dispute in this appeal concerns the authority of the trial court to conduct an *in camera* review of documents that are claimed to be protected by the advocate-victim privilege. Contemnors assert a circuit court cannot review *in camera* domestic violence counseling records because there is no provision in section 227 allowing for such a review. Contemnors deduce that the absence of an *in camera* review provision means the advocate-victim privilege is absolute and, thus, bars the court from conducting an *in camera* examination.

¶ 34 Illinois Supreme Court Rules address the authority of the trial court to conduct *in camera* reviews to resolve discovery disputes. Discovery rules in civil proceedings in the trial court provide that:

> "When information or documents are withheld from disclosure or discovery on a claim that they are privileged pursuant to a common law or statutory privilege, any such claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced or disclosed and the exact privilege which is being claimed." Ill. S. Ct. R. 201(n) (eff. July 1, 2014).

"The purpose of [Rule 201(n)] is to enable the court to evaluate the applicability of the asserted privilege and determine the need for an *in camera* inspection of the documents, and also to minimize any disputes between the parties regarding those matters." *Thomas v. Page*, 361 Ill. App. 3d 484, 497 (2005).

¶ 35    The rules addressing discovery and disclosures to the prosecution in felony criminal proceedings in the trial court provide that:

> "Upon a showing of materiality, and if the request is reasonable, the court in its discretion may require disclosure to the State of relevant material and information not covered by this rule." Ill. S. Ct. R. 413(e) (eff. July 1, 1982) (providing for compelled disclosure beyond requiring the accused to submit to procedures to secure evidence involving the use of his person, the production of medical and scientific evidence in defense counsel's possession, and the disclosure of the defenses the accused intends to offer, defense witnesses and their statements, and any records or physical evidence the accused intends to use).

Furthermore, concerning the regulation of discovery and *in camera* proceedings, the rules provide:

> "Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosures, or portion of such showing, to be made *in camera*. A record shall be made of such proceedings. If the court enters an order granting relief following a showing *in camera*, the entire record of such showing shall be sealed, impounded, and preserved in the records of the court, to be made available to the reviewing court in the event of an appeal." Ill. S. Ct. R. 415(f) (eff. Oct. 1, 1971).

¶ 36    In order to create a privilege, the plain language of the statute must explicitly state that the information that is confidential is also privileged, nondiscoverable, or inadmissible. *Klain v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 19. A privilege may be absolute or qualified in nature, and there are crucial distinctions between the two. In *Thomas*, where the court addressed the judicial deliberation privilege, the court explained the distinctions between absolute and qualified privileges.

> "If information is protected from disclosure pursuant to an absolute privilege, the opposing party cannot defeat the privilege by an *ad hoc*, case-specific showing of need for the privileged information. [Citation.] In such a case, the appropriate inquiry is whether the information sought falls within the scope of the privilege. If it does, the information is protected from discourse and the inquiry ends. By contrast, a qualified privilege can be defeated if the party seeking discovery of the privileged information can demonstrate that his or her need for the materials is sufficiently great to overcome the privilege. [Citations.] To meet this burden, the party seeking the information must show the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means. [Citation.] After the burden is met, the court then balances the demonstrated need for the privileged information against the degree of intrusion upon the confidentiality of the privileged communications necessary to satisfy the need. [Citation.]" (Internal quotation marks omitted.) *Thomas*, 361 Ill. App. 3d at 493.

¶ 37    When the legislature created the advocate-victim privilege, it provided that no advocate "shall disclose any confidential communication or be examined as a witness in any civil or criminal case or proceeding or in any legislative or administrative proceeding without the written consent of the domestic violence victim" except for situations involving abused and neglected children or an imminent risk of serious bodily harm. 750 ILCS 60/227(b) (West 2014). The provision of only these two exceptions for the advocate-victim privilege is a sharp

contrast to the multiple exceptions the legislature provided for the therapist-patient privilege under sections 10 and 11 of the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/10, 11 (West 2014)). Furthermore, the legislature provided that the wrongful disclosure of communication protected by the advocate-victim privilege constitutes a Class A misdemeanor. 750 ILCS 60/227(c) (West 2014). The plain language of section 227 of the Act indicates the legislature believed the overriding public good requires that domestic violence advocates and victims must be able to communicate with each other freely and frankly without fear that their communications might be publicly disclosed and anything less than the protection afforded by an absolute privilege would adversely affect the freedom of their communication. Accordingly, we recognize that the advocate-victim privilege is absolute in nature.

¶ 38 We disagree, however, with contemnors' assertion that the absence of any provision in section 227 for *in camera* review by the court bars the court from conducting *in camera* reviews. The decision to apply the advocate-victim privilege to bar discovery of certain documents turns on the question of whether the documents sought fall within the scope of the privilege, and the resolution of this question may rest on a factual inquiry performed by the trial judge. If a subpoena reveals on its face that the documents sought fall within the scope of an absolute privilege, the court does not need to look further than the face of the request. *Thomas*, 361 Ill. App. 3d at 497. If it cannot be immediately determined whether the sought documents are protected from discovery under the advocate-victim privilege, the Illinois Supreme Court Rules authorize the court to evaluate the applicability of the asserted privilege and determine the need for an *in camera* inspection of the documents. See *id.*

¶ 39 Here, we have already determined that the undisputed facts concerning the communication and the face of the subpoena establish that the documents sought by the State are absolutely protected from disclosure under the advocate-victim privilege. Accordingly, there is no necessity in the instant case for the circuit court to invoke its authority to conduct an *in camera* review of the sought documents.

¶ 40 B. Grand Jury Subpoena and *Res Judicata*

¶ 41 Contemnors argue that the State's failure to appeal the circuit court's ruling that granted the motion to quash the grand jury subpoena of the advocate's testimony before the grand jury precluded the State, under *res judicata*, from contesting the issues of whether defendant's statements to the advocate were absolutely privileged and remained privileged despite the advocate's disclosure pursuant to the imminent risk exception. Contemnors also argue, for the first time on appeal, that collateral estoppel precludes the State from contesting the same issues.

¶ 42 Contemnors have forfeited review of the issue of collateral estoppel by failing to raise it in the circuit court and include it in their written motion to quash the subpoena. See *People v. Terrell*, 185 Ill. 2d 467, 502 (1998). Furthermore, contemnors have failed to cite any relevant authority to support the proposition that a ruling quashing a grand jury subpoena can preclude the litigation of certain issues in a subsequent criminal proceeding based on *res judicata*. A grand jury proceeding is not a criminal proceeding. Professor Wigmore noted in his treatise on evidence that grand jury proceedings are both *ex parte* and interlocutory, and the grand jury only seeks for a probable cause so the jury-trial rules of evidence should not apply. 1 John Henry Wigmore, Evidence § 4, at 21 (3d ed. 1940). A grand jury proceeding is not an

adversary hearing in which the guilt or innocence of the accused is adjudicated; rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. *People v. Creque*, 72 Ill. 2d 515, 527 (1978). The doctrine of *res judicata* applies only to final determinations, and contemnors cite no relevant authority to show that the initial trial court ruling quashing the grand jury subpoena constituted a final determination. See *In re Estate of Pinckard*, 94 Ill. App. 3d 34, 45 (1980) (declining to find *res judicata* in the context of an appealed contempt order that did not impose a sanction because in the absence of a sanction, the contempt order was never appealable in the first place); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56 (a reviewing court deserves the benefit of cohesive legal argument and is not a depository into which a party may dump the burden of argument and research). Accordingly, we reject contemnors' argument concerning *res judicata* in the instant case.

¶ 43                    C. Contempt Fine and Good-Faith Assertion of Privilege

¶ 44        Contemnors ask this court to vacate the trial court's contempt sanctions based on contemnors' good-faith assertion of the absolute nature of the advocate-victim privilege.

¶ 45        It is well settled that the correctness of a discovery order may be tested through contempt proceedings. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). A pretrial discovery order is subject to appellate review when a party appeals a contempt sanction for refusing to comply with the order. *Id.* We review a trial court's decision imposing sanctions for noncompliance with discovery and subpoenas for an abuse of discretion. *Cohn v. Northern Trust Co.*, 250 Ill. App. 3d 222, 228 (1993); see also *People v. Richardson*, 2011 IL App (5th) 090663, ¶ 22 (an abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would agree with the position taken by the trial court). The circuit court's discretionary authority to impose sanctions for discovery violations must be exercised with great care and with the goal of full discovery and a full trial on the merits. *Wilhelmsen v. Century 21 Bee Line Realty, Inc.*, 193 Ill. App. 3d 64, 66 (1989). A contempt citation is an appropriate method for testing the propriety of a discovery order, and if the discovery order is found to be invalid, a contempt judgment for failure to comply with that discovery must be reversed. *Flannery v. Lin*, 176 Ill. App. 3d 652, 655 (1988).

¶ 46        As discussed above, the undisputed facts concerning defendant's statement and the subpoena seeking the records kept by Sarah's Inn in the course of providing services to defendant, an alleged domestic violence victim, concerning her and the services provided, established that the sought documents fell within the absolute privilege for advocate-victim communications. Because the court did not need to look further than the face of the request to conclude that the documents sought were absolutely protected from disclosure under the advocate-victim privilege, *in camera* review of the documents was not warranted in this matter. Therefore, we reverse the trial court's judgment of contempt and vacate the fine imposed by the court.

¶ 47                                  III. CONCLUSION

¶ 48        We conclude that the undisputed facts established that defendant's alleged threat to harm the detective was communicated to the advocate in the course of the advocate providing information, counseling, or advocacy and, thus, the advocate-victim privilege applied to prevent disclosure of the confidential communication in the State's prosecution of defendant

for threatening a public official. Although we hold that circuit courts have the authority to conduct *in camera* reviews of documents claimed to be protected by the advocate-victim privilege, which is absolute in nature, we find that an *in camera* review was unnecessary in the instant case to determine whether the documents sought by the State fell within the scope of the privilege. Accordingly, we reverse the judgment of the circuit court denying the contemnors' motion to quash the State's subpoena and ordering contemnors to produce the documents for *in camera* review. We also reverse the circuit court's contempt order and vacate the fine imposed on contemnors based on their good-faith assertion of the privilege.

¶ 49       Reversed and fine vacated.

¶ 50       PRESIDING JUSTICE GORDON, specially concurring.

¶ 51       I agree with the majority's well-written opinion in this case, but I must write separately as to the propriety of the contempt findings, which I find were improper in the first place for reasons not mentioned by the majority.

¶ 52       Initially, the State filed a "PETITION WHY RESPONDENT [Carol Gall] SHOULD BE HELD IN DIRECT CIVIL CONTEMPT ORDER [*sic*]." The trial court entered an order on August 5, 2015, that respondent, Carol Gall, executive director of Sarah's Inn, "is found in direct civil contempt." No fine or conditions were imposed, and the contemnor was not given the ability to purge herself of the contempt in the order. In the transcript of the proceedings, the trial court stated, "I'm staying any sanctions."

¶ 53       Illinois Supreme Court Rule 304(b)(5) only allows an appeal from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Feb. 26, 2010). Generally, if an order does not mention the word "contempt" or impose a fine or penalty for a contempt finding, then the order is not appealable under Rule 304(b)(5), and if it is not a final order, then it is not appealable until a final order is entered. *Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 921-23 (1999); *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶¶ 37-38. As a result, the direct civil contempt order was improper for two reasons: (1) the contemnor was not given the ability to purge herself of the contempt, and (2) no monetary fine or other penalty was imposed. See *County of Cook v. Lloyd A. Fry Roofing Co.*, 59 Ill. 2d 131, 135-36 (1974); *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43-44 (1990).

¶ 54       On August 6, 2015, the trial court entered an order of adjudication of direct criminal contempt against Sarah's Inn and Carol Gall, imposing a $500-per-day sanction for each day of noncompliance with the court's order.

¶ 55       This appears on its face to be a valid criminal contempt order, but it does not appear that a hearing was held that date or that criminal contempt was contemplated by the trial court during any of the hearings on the matter. In order for the trial court to find the contemnor in criminal contempt for an act that occurred before the judge, such as failure to produce an ordered document, the trial court must advise the contemnor of (1) the conduct deemed contemptuous, (2) the right to receive a copy of the written order of the adjudication of contempt, and (3) the right to appeal. *People v. Coupland*, 387 Ill. App. 3d 774, 778 (2008). In the transcript in the record on appeal, there is no mention of direct criminal contempt. As a result, I would find the trial court was required to follow the three steps explained above in order to have a valid direct criminal contempt order, which did not occur here.

- 12 -